on this panel's calendar for today. The first is 21-7283, United States v. Slocum. Mr. Mancina. Whenever you're ready. Good morning. May it please the court. The government's case against Mr. Slocum was flawed from the beginning. It filed a multiplicitous indictment by dividing a single narcotics conspiracy across two counts in the indictment, Counts 1 and 2. The conspiracies alleged in those counts are nearly identical. They took place at the same time, in the same location, and involved the same statutory offense, 21 U.S.C. Section 846. The only difference between the two counts was the type and quantity of drug alleged, one kilogram or more of heroin in Count 1 and an unspecified amount of oxycodone in Count 2. But the unit of prosecution in conspiracy cases is the agreement, not the objects of the conspiracy. That is why it is well settled both in Supreme Court precedent and this court's precedent that a single agreement to commit Mr. Slocum's trial counsel was ineffective for failing to raise a multiplicity challenge. That failure prejudiced Mr. Slocum not only by exposing him to an additional conspiracy conviction and an additional $100 special assessment, but it prejudiced him at trial. The government's case against Mr. Slocum on the remaining counts was weak. It was predicated entirely on testimony from compromised witnesses who were cooperating with the government. The multiplicity indictment put a thumb on the scale. Can I ask about that first prong of Strickland about ineffectiveness? So I think what we're asking is whether there was relevant authority at the time strongly suggesting that this argument was warranted. So what's your best case before 2015 foreshadowing a successful argument that entering judgment on the heroin conspiracy and on the oxycodone conspiracy would violate the prohibition on double jeopardy? I think there's really three strands of case law, but I'll start with Braverman. The principle in Braverman that a single agreement to commit multiple crimes constitute one conspiracy offense was well established by 2015 or 2014 when this case occurred, and that had been reaffirmed both by the Supreme Court and this court. I think the other case that's relevant are the McDougall line of cases where this court had applied a totality of the circumstances test, and if you apply that test to this case, it's very clear that there's one conspiracy here, that there was only one agreement to distribute both drugs. And then I think the third line of cases are sort of the variance cases, and in particular the one in this court, United States v. Urbanic, where this court upheld a single conspiracy to distribute two drugs. So you think counsel should have put all of those pieces together and seen that it was strongly suggested that this sort of argument should have been made and would have been successful? Yes, Your Honor, yes. What do we do about the fact that when our court considered that question a few years later, we didn't reach that conclusion in Ivey? Yes, Your Honor, well, I think Ivey is a little bit of an outlier. As you said, it occurred after the facts of this case. Right. I'm just trying to, we're supposed to be putting ourselves back in, back at the time and looking at what did counsel who had this case law available at the time, what would effective counsel have done? And I'm sure that effective judges a couple years later wouldn't have done that, in fact, reached the opposite conclusion. It's not precedential, it happened later. I'm not saying it controls what counsel should have done in 2015, but it seems like a data point. And how do I factor that in? Well, I think it's important in that case, the issue wasn't fully before the court. There was just Anders' briefing in that case. Actually, the government never submitted a brief. And counsel who did submit a brief, his Anders' briefing sort of makes sense, but I don't think it's a good argument. Also, when Ivey, the court applied the Blockberger test, which just doesn't make sense in this circumstance. In other cases, this court has made clear that you only apply Blockberger when you have two distinct statutory offenses. Here, where you have two conspiracies under 846, Blockberger wouldn't work. So I think Ivey... There was, I think, again, unpublished, an 11th Circuit case that McDougall certainly was on the books. Is it your position that McDougall controls, or that McDougall involves successive cases, so the logic controls, but it's somewhat of an extension? I wouldn't argue that it is an extension, Your Honor. I do think the test in McDougall controls. Almost every other circuit has adopted a McDougall-like test, and they apply it to multiplicity cases. Was there any contrary authority at the time when counsel was presumably making this strategic choice not to object? No, Your Honor. Outside of the 11th Circuit that Judge Quattro... Which is unpublished. Which is unpublished, and I would say there's two published out-of-circuit cases. I mean, the other thing that I think is relevant is, so what's the point here by not making the objection? Yeah, I agree, Your Honor. There was no strategic choice here. There was no downside. Well, we don't know, because there wasn't a hearing, right? Normally, with an IAC claim, we have a hearing, and we hear what the attorney's reasoning was, or we find out that they were clueless and didn't know. But here, we don't have that, because there wasn't a hearing. We don't have that, but again, there's not... The government hasn't offered any downside to raising this issue for trial counsel, and I can't think of any either, especially when you had a lot of braver men on the books, a lot of this authority. But should we... I mean, maybe. There may be no good reason. It may be the authority strongly suggests that, but just as a matter of practice, don't you think it's worth us hearing from the counsel that you're asking us to declare ineffective before we would make that decision? I mean, it seems like a fair thing to me. I mean, if I was being declared ineffective, I'd like to have a chance to explain myself if I had an explanation. What do you think about that? I think, you know, very well, we could send it back, or you could send it back down to have counsel submit an affidavit or have an evidentiary hearing, but in this case, counsel had ample opportunity to raise this claim. I mean, there was a lot of litigation before trial. He actually filed a dismissive indictment, but not on multiplicity grounds. And then this kept coming up again and again during trial. The government mentioned several times in its opening and closing statements that this was one big conspiracy, and it didn't set off any alarm bells. And so it really seems like counsel just wasn't informed on this issue, hadn't done the research, and really looked into this issue. And so I think there's enough of a record here. Can I ask you a question about the prejudice prong of this case? Yes. And so there's some authority, I guess a contrary unpublished authority in our circuit that when we're talking about prejudice in the 2255 context, we're talking about custodial prejudice. And here, the principal element of prejudice that you're alleging is that this would have resulted in nonpayment of a special assessment. I think it's $100, if I recall correctly. Is that the extent of the prejudice here? No, Your Honor. We would argue the prejudice goes beyond that. Not only that conviction itself carries some prejudice, there's always collateral consequences to having an extra conviction. As you mentioned, there's the special assessment. But we also believe there was prejudice at trial itself. That going to trial with a multiplicitous indictment sort of taints the jury's impression. Well, let me ask you about that. But isn't it clear that all of the underlying evidence regarding these two convictions would have come in at trial, even if the count had not been before the jury? Yes, they would have come in. But I think the key is that the extra count at the beginning sort of tainted the jury's view of Mr. Slogan. Don't you kind of undermine that argument by talking of it seems like your argument that this was presented as effectively one conspiracy undermines your argument that there was trial prejudice. Now, I get it. It started with two, and maybe that fact alone is enough. I'm not sure you need to get there, do you? I mean, don't you, I mean, maybe it's not published, but the special assessment and the collateral consequences, if we were to go that route, would be enough. It seems like your trial argument, to me, is undermined by your basic argument that this was a conspiracy. Well, I agree with your Honor that we can get there alone just with a special assessment. I think that alone warrants a remand under the Sellers case that you were mentioning, even though that's unpublished. But we still think there was trial prejudice, just the presence of the extra count itself. You know, you only get one chance to make a first impression, and Mr. Slogan's first impression with the jury was that he had committed, or allegedly committed, five crimes instead of four. And that in and of itself, especially here in this case, where the evidence was really close. I mean, the gun charges, for example, the government never presented the guns. They never found them. It was based on, each gun charge was based on a single eyewitness testimony that was, you know, pretty unreliable. Both witnesses were cooperating with the government. Both witnesses testified that their memory of the events in question were a little shaky because they had been using drugs at the time. And so there's a chance here, even if it's, you know, sort of minimal, that the multiplicitous indictment put a thumb on the scale in favor of the government here. If we agree with you that there was double jeopardy, if we agree with you that there's ineffective assistance of counsel, and we agree with you that there's prejudice, is, do we have, and I know you want a new trial, do we have authority to remand for resentencing? Yeah, you do. Yes, you do have that authority, Your Honor. And I suppose that's why you're making the trial prejudice argument, because you would like a new trial. I mean, I don't mean that in a contrived way, but that's your position, I guess, and it relates to the remedy you see. Yes, Your Honor. We would like a new trial in this case. And just going back, you know, another point I'd like to make with the evidence and the new trial prejudice is that I think the question, at least on the first count, the conspiracy count of how much, how many drugs there were here, was there a kilogram or more of heroin, that evidence was also pretty weak. Again, the government was relying on witnesses testifying about how many drugs they bought over a long course of time. Many of them had inconsistent statements. Many of them admitted that they were buying drugs from other people who might not have been involved in this alleged conspiracy. And so if there was one less count in the indictment, there's a chance, you know, the jury would have had a slightly more favorable impression of Mr. Slocum. They might not have voted guilty, or at the very least, they might not have found that there was one kilogram or more of heroin, which would have changed the outcome of the case here as well. Don't we assume that juries follow their instructions conscientiously, and if all the evidence would have come in, the same jury would have heard the same evidence. They're instructed to determine whether a certain crime occurred. We have to assume that they followed the instructions and they didn't consider, you know, well, this person has five counts instead of four counts, so they just must be guilty of all of them. That's true, Your Honor. We do assume, I guess, that the jury follows their instructions. But I think it's important, the Maxwell case out of the Sixth Circuit decided not to grant a new trial, and one of the reasons it didn't was because the judge had instructed the jury that the number of charges is no evidence of guilt. But there was no such instruction in this case. The jury wasn't instructed on that fact. And so there's a chance that just by having a large number of counts against him, that may have sort of tainted the jury's impression of Mr. Slocum and slightly biased them against him. And they may have assumed, you know, he committed these crimes because he seems like someone that engaged in a lot of criminal activity. And that's sort of the fear that you have with multiple citizen indictments. I think that's all I have for now. Unless there's any further questions, I'll reserve the remaining for rebuttal. Thank you, Mr. Mancina. Mr. Hanks? Thank you, Your Honor. May it please the Court. As has already been pointed out this morning, we're here on 2255, which means we're here looking first at this prejudice prong, or the performance prong, which means that in order to prevail, the defendant's argument is that the law was so settled that the defendant's argument was so settled that the law was  on this issue. The trial counsel was ineffective for claiming, for raising the claim that drug conspiracy charges brought in one indictment, having different objects, having different penalties, was multiplicitous. If the law is not completely settled, then the defendant does not prevail here. Is that, I mean, is that really it? I mean, isn't, doesn't the law say if the law strongly suggests an outcome, that not raising the argument is ineffective? And if so, how does McDougall not do that? The only thing I can see about McDougall that's different is that it's successive. And even when it's, in its language, it cites cases that aren't successive conspiracy charges for the result it makes. And it at times uses language about conspiracies without talking about successive conspiracies. So how doesn't McDougall alone, if not, foreshadow this in a sufficient way? McDougall is helpful. I mean, it's not directly on point because of the successive conspiracy that it's... Is there anything that would, is there any daylight in this, in McDougall, other than successive, than it's successive? Yes, one of the factors under McDougall is, of course, the statutes involved. And here, Congress set forth two different penalties, which is why it was charged in two different counts. And so that is a clear beam of daylight that would be distinct between McDougall and the Slocum case. I mean, the jury is faced with having to make a determination of guilt of each charged conspiracy. And Judge Copenhaver specifically instructed them that these are separate and independent conspiracies. And in great detail, instructing the jury, you have to evaluate count one as a separate and independent conspiracy with certain objects, that is the one kilogram of heroin, and then count two as a conspiracy with respect to the oxycodone. And I think that that, the nature of those statutory distinctions in the name of the substances, coupled with the fact that there are different players, even under the facts of the case. There were people who were only involved on the heroin side. There were people who were only involved on the oxycodone side. And so the jury considered all of that. And counsel claims that the evidence was there last week, but the jury was the finder of fact there. And the jury considered all that testimony. And then Judge Copenhaver, of course, was in the room as well, and on review of the 2255, recalled those facts, recalled the findings that were made by the jury, and made those same findings. So fundamentally, the court would have to conclude that Judge Copenhaver's fact findings were clearly erroneous if we're going to think about whether or not these are really just one conspiracy. But wasn't that the theory, the government's theory at trial, and what they closed with at the end, that this is just one big agreement and conspiracy? Well, it's a hub-and-spoke conspiracy. I would love for the jury to always just buy my statements and my theory of every single case. You tried the case? I was at the trial, yes. I did not make that statement, but I was at the trial. But, you know, it was a hub-and-spoke. So Mr. Slocum is at the middle, and there were certain people that were part of the heroin side, there were certain people that were part of the oxycodone side. And that was the evidence that was presented. So there was a tremendous amount of overlap, but there were distinctions between the two counts. So the questioning that's already taking place today referred to the Ivey case. Ivey rests, or relies heavily, on the Third Circuit case of Trevelyan. And that is directly on point. Trevelyan was a crack-and-powder conspiracy cases charged in separate counts. The question was whether there was one or more agreement that had different objectives, and whether the two counts depended on one another. And then because the punishments are different, according to the to determine what exactly the jury was figuring out here, have two separate counts and two separate verdict forms. Some of the cases, the conspiracy cases that McDougall references, even in Broberman being one, is that there was a general verdict. So it was hard to tell what it was that the jury was actually voting on. In a lot of these multiplicity conspiracy cases, the government conceded that what it had done was to charge an overt act as a separate conspiracy. And all those separately charged acts were simply one conspiracy. We don't have that here. You pointed to Trevelyan, and I guess the other case that applies Braverman's framework to this set of facts is Vasquez-Rodriguez. But doesn't that, I mean, that just proves the point, doesn't it? That you have to consider each case on its individual facts, apply the five factors that are highlighted in those cases, and decide on those facts whether or not there was a single conspiracy or more than one. And why wasn't counsel, why wasn't the record in this case strongly suggestive of an objection based on the facts of this case? Well, again, you're correct. It's always going to be fact-specific. Under the McDougall analysis, it's always going to be fact-specific. However, the facts here, it is unlikely that defense counsel would have prevailed or maybe even gotten to a prima facie showing or a, I can't remember the exact standard used, but a prima facie showing of The facts that Judge Copenhaver found showed that there were two different conspiracies. So trial counsel was also faced with this whole raft of cases that upheld two different charges for simultaneous possession with intent to distribute two different drugs. So the current of the case law was it's fine to charge one agreement, one act that involves two separate controlled substances in two separate accounts. The correction on the back end to make sure that someone isn't twice punished is that there's concurrent sentencing. And then as Your Honor pointed out, an extra $100 special assessment, which goes to the prejudice side of this. So I hope that answers your question. But I do think that it's always going to be fact-specific. And in this case, both the jury and Judge Copenhaver made those two separate conspiracies involving two separate drugs. That's the end of the story. No, there's going to be some note. I've personally charged cases where two drugs are charged in one conspiracy account. That's for two particular reasons. One is if there's no difference in the sentencing scheme, if they're both 0 to 20, so they're both 5 to 40, at that point we would charge it probably in one count if everything else overlaps and then have a special verdict for them to make sure that the jury votes on each substance that's alleged. The second reason would be if it truly is one whole conspiracy where all of the players are together and they have a common interest and it takes place in the same location and all that. In this case, primarily, we had some of it that took place outside of Charleston, which is what Magistrate Judge Eifert noted with regard to the oxycodone, and that was adopted by Judge Copenhaver. So that separated it, count two from count one, and this different substance separated count two from count one. So it is proper to charge it the way that we did. It is proper for the defendant to be convicted the way he was, but there are circumstances where it's permitted and would also be a legitimate charge to charge multiple drugs in one count. The factors are going to mostly be regarding sentencing. Okay. Do you have anything else? Nothing further. Thank you. Thank you, Mr. Hanks. Mr. Mancina? Thank you. Just a few points on rebuttal. First, I'd like to mention that the standard for deficient performance here is not that the case law had to be so settled that it was clearly obvious to counsel to raise the issue. It just has to have been strongly suggested or sufficiently foreshadowed. In McDougall, Braverman, the single conspiracy cases involving multiple drugs here were more than sufficient to strongly suggest that a multiplicity challenge should have been raised. And as I was mentioning earlier on, my opening statement. Is that at, probably doesn't matter for the outcome, but was it strongly foreshadowed it should be raised when the indictment was delivered or after the evidence came in at trial? It seems like there's both the question of does the law point a certain direction and then the question of did these facts support the objection. And the indictment didn't give a lot of facts about who the co-conspirators were and that sort of thing. So typically a multiplicity challenge should be raised before trial in a motion to dismiss the indictment. And the standard is that the defendant has to raise a non-frivolous showing that there was a single conspiracy and then the burden shifts to the government to prove by a preponderance of the evidence that there's multiple conspiracies. But then often the district court will say, well, we're going to let the evidence come in and see what it shows and decide, you know, at that point whether punishment can be or a conviction can be entered for both, whether it's truly a different conspiracy or not. They could let it go to trial. I have seen some cases also where the government submits a proffer of the evidence that they might present or there could even be, I think the Third Circuit actually in the Trevelyan case they mentioned that they have pretrial hearings sometimes to let in some of the evidence to see if there's a single conspiracy or multiple conspiracies. But either way, counsel here should have raised it before trial or during trial because both the, I mean, the indictments are almost identical aside from the drug and quantity and then at trial the evidence just sort of reaffirmed that. Here there was nearly a perfect overlap in co-conspirators and methods. I mean, there was sort of, the government kept pointing out that this was sort of the same method for everything. All of the co-conspirators here either knew or were involved in selling both oxycodone and heroin. Many of them knew each other. They could identify other members of the conspiracy, which I think distinguishes this from Trevelyan in a lot of the cases, the government sites and the lower court cited here. There was an overlap here and everyone knew what was going on. In Trevelyan there wasn't necessarily that perfect overlap when they analyzed the factors. Some of the co-conspirators only knew about the crack conspiracy in that case and some of them only knew about the powder conspiracy in that case. In this one, almost to a T, every single witness knew about both oxycodone and heroin. Counsel, this is just analytically. If you assume the McDougall totality test was the right test that should have applied and it is satisfied by the facts presented here, it is satisfied in a way that they are separate, that it is actually two conspiracies. I know that is not your position, but just hypothetically. In that situation, would you agree there is no prejudice by not raising the issue? Yes, I would agree if the McDougall test turned out to show that there were two conspiracies, but here. Well, let me just, okay. So in regard to the totality test, this is something your colleague mentioned. The district court found that I think Ms. White and Ms. Beeman and the testimony they provided in addition to the different drugs cut in favor of two conspiracies. And I know from briefing, you all point out how you think that was wrong. But I'm trying to kind of get an understanding of how we deal with the district court's factual findings there. The district court found certain things that might cut in favor of a separate conspiracy even under the McDougall test. And if we think those findings, if true, would lead to a conclusion that there are separate conspiracies, do we review those findings for clear error? If the district court did make factual findings, but I think this was a legal assessment. It was a double jeopardy. Ultimately, for sure, it was a legal assessment. But didn't he make findings related to Adriana White and Gabrielle Beeman that they were involved in only one aspect or only one conspiracy or that their conduct supported the fact that there were separate conspiracies? And that may not be enough to create two conspiracies. I'm not asking to concede anything. I'm just trying to understand your view of how we look at the district court's treatment of those two co-conspirators. And it seems like from a factual standpoint, the district court found that they were doing things that were only related to one drug in a way that the district court thought suggested two separate conspiracies. And I'm just trying to get a review of his factual findings. Maybe there is nothing factual. It sounded factual to me there. And I wonder if we're not bound by the clear error standard, at least for that part of the case. I don't think the clear error standard applies because they were just sort of citing testimony in the record. I'm not sure that constitutes a factual finding. Even if clear error applied, I think as we pointed out in our brief, it's erroneous. Ms. Beeman and Ms. Hagan both talked about a trip outside of Charleston, and it involved both drugs. They talked about both heroin and oxycodone. So that finding is just erroneous. And Ms. White was a buyer, not a seller. And so a buyer, their preferences for what kind of drug they like to buy from the conspiracy says nothing about the scope of the agreement between the co-conspirators. So I think both of those findings, even under a clearly erroneous standard, would be clear error. I see that my time has run. We ask that you remain with instructions to grant a new trial. Thank you. Thank you, Mr. Mancina. I want to thank both counsel for their arguments this morning. It's still morning, I guess. We can come down and greet you and move on to our last case.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., Allison J. Rushing